**Office of Disciplinary Counsel v. Lappe**

Disciplinary Board Docket no. 38 D.B. 2004.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

O'CONNOR, *Member,* February 22, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On March 16, 2004, Office of Disciplinary Counsel filed a petition for discipline against respondent, Paula M. Lappe. The petition charged respondent with professional misconduct arising out of allegations of neglect of two client matters and noncompliance with certain requirements relative to her transfer to inactive status. Respondent did not file an answer to petition.

A disciplinary hearing was held on August 23, 2004, before Hearing Committee 4.02 comprised of Chair John James Mead, Esquire, and Members Frederick C. Leech, Esquire, and Gene R. Peck, Esquire. Respondent did not appear at the hearing.

Committee 4.02 filed a report on December 9, 2004, finding that respondent engaged in violations of the Rules of Professional Conduct and Rules of Disciplinary Enforcement, and recommending that respondent be suspended for a period of two years.

No briefs on exception were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of January 19, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, Paula M. Lappe, was born in 1959 and was admitted to practice law in the Commonwealth of Pennsylvania in 1984. Her office address is P.O. Box 27, Hibbs, Fayette County, Pennsylvania 15443. She is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has no prior record of discipline.

(4) By order dated July 25, 2002, effective August 24, 2002, the Supreme Court of Pennsylvania transferred respondent to inactive status for failure to comply with Rule 111(b), Pa.C.L.E.

(5) Respondent has not returned to active status.

*Charge I—Mable Matter*

(6) In January 2001, respondent was contacted by Steven Mable to represent him in an attempt to gain a new trial following his 1995 conviction in the York County Court of Common Pleas.

(7) By letter dated January 19, 2001, respondent informed Mr. Mable that she would come to the State Correctional Facility in Somerset and speak to him once she received a retainer, and she was firm about being paid the retainer prior to initiating representation.

(8) Respondent and Mr. Mable agreed to a fee of $9,500.

(9) Respondent had never before represented Mr. Mable.

(10) Respondent did not provide Mr. Mable with a written fee agreement regarding the representation.

(11) Respondent was paid the entire $9,500 over the next 10 months.

(12) In the spring of 2001, Mr. Mable forwarded to respondent all of his trial records and transcripts so respondent could review the case.

(13) Respondent never entered her appearance as counsel for Mr. Mable.

(14) Mr. Mable sent respondent at least three separate letters by certified mail during the time period of mid-May to mid-June 2002 requesting the status of his case and an opportunity to speak with respondent.

(15) The return receipt cards bear signatures accepting delivery and on two of the mailings a delivery date is shown as May 20, 2002 and June 5, 2002, respectively.

(16) Because respondent did not communicate with him, Mr. Mable wrote a letter dated June 3, 2002, to Judge John C. Uhler of the York County Court of Common Pleas concerning his case.

(17) The court sent respondent a copy of Mr. Mable's letter.

(18) Mr. Mable telephoned respondent on both July 10 and July 11, 2002, and spoke with respondent for a total of 10 minutes regarding his case.

(19) On August 1, 2002, Office of Disciplinary Counsel sent respondent a letter notifying her that Mr. Mable had filed a complaint against her and that it was being dismissed. Office of Disciplinary Counsel requested a copy of the written fee agreement provided to Mr. Mable and suggested that either respondent communicate with Mr. Mable in light of the monies he had paid her or refund any unearned fee.

(20) Office of Disciplinary Counsel never received a copy of a written fee agreement.

(21) On August 1, 2002, Mr. Mable sent respondent a letter in which he expressed dissatisfaction with re-

spondent's representation and requested either she take action or refund the $9,500 fee.

(22) Mr. Mable did not receive a reply to his letter.

(23) By letter of August 12, 2002, Mr. Mabel requested that respondent cease all efforts at representing him and refund the monies previously paid and return all documents to Mr. Mable.

(24) Thereafter, respondent had a conversation with Mr. Mable's mother in which respondent said she would visit Mr. Mable in prison on or about August 21, 2002.

(25) Respondent never visited Mr. Mable.

(26) Respondent was transferred to inactive status effective August 24, 2002, by order of the Supreme Court of Pennsylvania, due to her failure to fulfill CLE requirements.

(27) Respondent was provided with a copy of the court order and informational handouts regarding her obligations pursuant to the Rules of Disciplinary Enforcement.

(28) Respondent attempted to pay her annual registration fee, but her registration form and check were returned as she had not complied with the CLE requirements.

(29) Although respondent was required to do so, she did not inform Mr. Mable of her transfer to inactive status and her inability to represent him.

(30) On October 15, 2002, Mr. Mable, by pro se filing, submitted a petition for post conviction relief to the York County Court of Common Pleas.

(31) Judge Uhler scheduled a hearing for December 20, 2002, and had a copy of the scheduling order sent to respondent as she was listed in the filing as Mr. Mable's counsel.

(32) Mr. Mable, by letter of November 11, 2002, sent by certified mail, asked respondent about the status of his case and again requested a refund of the $9,500.

(33) At the hearing on December 20, 2002, Judge Uhler appointed Attorney Brian Perry of Harrisburg to represent Mr. Mable as the court was made aware of respondent's inactive status.

(34) Respondent has not returned to Mr. Mable his transcripts or other documents, nor has she refunded the $9,500 she accepted for the representation.

(35) Office of Disciplinary Counsel sent a letter of inquiry to respondent on August 22, 2003, requesting that she provide certain financial records and documents.

(36) Respondent did not reply or provide the documents or records requested.

*Charge II—Cunningham Matter*

(37) In April 2002, Dorothy Cunningham contacted respondent for representation of her daughter, Joyce, in a custody modification hearing to be held in the Fayette County Court of Common Pleas.

(38) On April 22, 2002, respondent met with Dorothy and Joyce Cunningham and agreed to represent Joyce.

(39) Respondent requested $1,500, which Dorothy Cunningham paid on behalf of Joyce Cunningham.

(40) Respondent did not provide a written fee agreement to her client regarding the basis or rate of her fee.

(41) At the conclusion of the meeting on April 22, 2002, respondent informed her client that the custody modification papers would be ready for signature the following week, and that she would contact Ms. Cunningham to arrange a convenient time to sign them.

(42) Respondent did not communicate with her client until June 2002, at which time respondent told her client that she would not start any custody modification proceeding until after an ongoing Children and Youth Service investigation had concluded.

(43) In mid-July 2002, Ms. Cunningham telephoned respondent's office to apprise her that the CYS matter had been concluded. Respondent and her client agreed that the custody modification would be initiated by mid-August and no later than September 2002.

(44) Following the July 2002 conversation, respondent had no further communication with her client.

(45) Following respondent's transfer to inactive status, she failed to inform Ms. Cunningham that she was not permitted to represent her.

(46) Ms. Cunningham sent a certified letter dated September 4, 2002, to respondent. Ms. Cunningham reminded respondent of the custody modification and that if respondent was unable to represent her, she wanted an itemized billing of respondent's expenses and the return of the remaining balance of the $1,500 previously paid.

(47) The certified mail was returned and marked as unclaimed.

(48) Ms. Cunningham sent a letter by regular mail dated September 17, 2002, regarding the status of her case.

(49) This letter was not returned as undeliverable.

(50) Shortly thereafter, Ms. Cunningham contacted the Pennsylvania Bar Association and learned that, as of August 2002, respondent was on inactive status.

(51) Respondent has not returned any of the unearned fee of $1,500 to Ms. Cunningham and her mother.

(52) On August 14, 2003, respondent was sent a letter of inquiry from Office of Disciplinary Counsel, requesting that respondent provide certain financial records and documents.

(53) Respondent did not reply or provide the documents and records requested.

(54) Respondent was personally served with the petition for discipline and had notice of the pre-hearing conference and disciplinary hearing.

(55) Respondent did not appear or participate in the pre-hearing conference or the disciplinary hearing.

## III. CONCLUSIONS OF LAW

By her conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client.

(2) R.P.C. 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

(3) R.P.C. 1.4(b)—A lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation.

(4) R.P.C. 1.5(b)—When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation.

(5) R.P.C. 1.16(d)—Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that has not been earned.

(6) R.P.C. 8.1(a)—A lawyer is subject to discipline if the lawyer has failed to disclose a material fact requested in connection with any disciplinary matter.

(7) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(8) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

(9) Pa.R.D.E. 217(a)—A formerly admitted attorney shall promptly notify, or cause to be notified, by registered or certified mail, return receipt requested, all clients being represented in pending matters, other than litigation or administrative proceedings, of the transfer to inactive status and the consequent inability of the formerly admitted attorney to act as an attorney after the effective date of the transfer to inactive status and shall advise said clients to seek legal advice elsewhere.

(10) Pa.R.D.E. 217(e)—Within 10 days after the effective date of the transfer to inactive status order, the formerly admitted attorney shall file with the board a verified statement showing (1) that the provisions of the order and these rules have been fully complied with; and (2) all other state, federal and administrative jurisdictions to which said such person is admitted to practice. Such statements shall also set forth the residence or other address of the formerly admitted attorney where communications to such person may thereafter be directed.

## IV. DISCUSSION

Petitioner has established by a preponderance of the evidence that is clear and convincing that respondent engaged in professional misconduct. Petitioner's exhibit 1 is the petition for discipline filed against respondent at no. 38 D.B. 2004. Respondent was personally served with the petition on April 9, 2004. She did not file a responsive pleading. Any factual allegation not timely answered is deemed admitted. Rule 208(b)(3), Pa.R.D.E.

Respondent engaged in neglect of her clients' cases, failed to keep her clients informed about their cases, failed to provide her clients with a written document evidencing the basis and rate of her fee, and failed to return client papers and unearned fees to the clients when the representation was terminated. Respondent was paid $9,500 in the Mable matter and $1,500 in the Cunningham matter, and took no action on behalf of either client. In addition, respondent was placed on inactive status for failing to fulfill her Continuing Legal Education requirements, and did not notify her clients of her inability to represent them.

Respondent essentially took her clients' money and abandoned her practice. Throughout the course of Office of Disciplinary Counsel's investigation and the commencement of formal proceedings, respondent was presented with opportunities to act professionally and responsibly, and to explain her actions, but failed to do so. Her lack of participation culminated in her failure to appear at the disciplinary hearing, thus relinquishing yet another chance to defend herself. The board is persuaded, based on the facts of record, that a suspension is appropriate and is necessary so that respondent is required to petition for reinstatement if she wishes to practice in the future. In a similar case, an attorney engaged in the general neglect of three client matters and failed to refund unearned fees. *In re Anonymous No. 93 D.B. 1998,* 535 disciplinary docket no. 3 (Pa. July 20, 1999). This attorney had a history of discipline. The court suspended him for one year and one day. In the matter of *In re Anonymous No. 73 D.B. 1995,* no. 286 disciplinary docket no. 3 (Pa. Dec. 30, 1996), the attorney was suspended for one year and one day following his general neglect of client matters, failure to refund unearned client fees and practice of law while on inactive status. This attorney had no history of discipline.

While the instant matter is similar in nature to the above cited cases, respondent's failure to appear for the disciplinary hearing or participate in any meaningful way to defend her law license aggravates the circumstances. Respondent has also failed to account for and return the unearned portion of the fees she received, return the documents that she was given by her clients and failed to provide any of the documents demanded by the Office of Disciplinary Counsel. Additionally, there is no docu-

mentation that the respondent did any of the work she was retained for, or any reasons given for her lack of attention to these matters and, as such, the majority of the Disciplinary Board agrees with the Hearing Committee that this is justification for a suspension of two years.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Paula M. Lappe, be suspended from the practice of law for a period of two years.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Brown dissented and would recommend a suspension of one year and one day.

## DISSENTING OPINION

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

BROWN, *Member,* February 22, 2005—A majority of the board has recommended to the Supreme Court that respondent be suspended for a period of two years. I recommended that respondent be suspended for one year and one day and write this dissent to explain the reasons for my recommendation.

I agree that respondent must be suspended for a significant length of time so that she must file a petition of

reinstatement and subject herself to reinstatement hearing if she wishes to practice in the future.

In accordance with past cases decided by this court and the Disciplinary Board (see *In re Anonymous No. 93 D.B. 1998,* 535 disciplinary docket no. 3 (Pa. July 20, 1999), and *In re Anonymous No. 73 D.B. 1995,* no. 286 disciplinary docket no. 3 (Pa. Dec. 30, 1996), both cited on page 126 of the majority opinion, I would impose a suspension of one year and one day. While I agree respondent's failure to participate in the disciplinary process is an aggravating factor, I do not believe it warrants the addition of another year suspension. By imposing a suspension of one year and one day, thus requiring a reinstatement hearing before respondent can again practice, the public interest is served, the disciplinary system is satisfied, and respondent can explain during her reinstatement hearing the reasons for her failure to actively participate in the disciplinary process.

For these reasons, I would recommend a suspension of one year and one day.

## ORDER

And now, May 11, 2005, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania and dissenting opinion dated February 22, 2005, it is hereby ordered that Paula M. Lappe be and she is suspended from the bar of this Commonwealth for a period of two years, and she shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.